HOWARD M. PRIVETTE (State Bar No. 137216)
D. SCOTT CARLTON (State Bar No.239151)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705
Email:  howardprivette@paulhastings.com

Attorneys for Defendant
STUART H. WOLFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re HOMESTORE.COM, INC. SECURITIES LITIGATION | Case No. CV 01-11115 RSWL(CWx) |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT STUART H. WOLFF BASED ON JURY VERDICT;** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **[Declaration of Howard M. Privette and [Proposed] Final Judgment In Favor of Defendant Stuart H. Wolff filed concurrently herewith]** |
| This Document Relates To:<br><br>ALL ACTIONS. | Date:    April 20, 2011<br>Time:    10:00 a.m.<br>Ctrm:   21<br><br>The Honorable Ronald S.W. Lew |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE THAT** on April 20, 2011, at 10:00 a.m., in Courtroom 21 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California, Defendant Stuart H. Wolff ("Mr. Wolff") will and hereby does move the Court for an order that judgment be entered in favor of Mr. Wolff, and against Lead Plaintiff and the plaintiff Class, based on the jury's verdict following the trial of this action, approving the [Proposed] Final Judgment in Favor of Mr. Wolff, and instructing the Clerk to enter the [Proposed] Final Judgment in Favor of Mr. Wolff.

   This Motion is made pursuant to Rule 58 of the Federal Rules of Civil Procedure and relevant provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 & 78u-5, and is based on the jury's findings in the Special Verdict returned and entered after trial (Dkt. No. 1362), and the statutory and other reductions that must be applied to any damages based on the jury's Special Verdict.

   This Motion is made following efforts to discuss the substance of this motion with counsel, including repeated oral and written requests for conferences to discuss the content of the judgment in this case, which took place from February 25 - March 1, 2011, and correspondence between counsel dated March 14-16, 2011.

   This Motion is and will be based upon the Memorandum of Points and Authorities attached hereto, the Declaration of Howard M. Privette with its supporting exhibits (including the March 16, 2011 Declaration of Meir Statman); the Special Verdict (Dkt. No. 1362), all other pleadings, orders and papers on file herein; and such further oral or written argument or evidence as may be presented at or before the Court's ruling on this Motion.

DATED:  March 17, 2011  PAUL, HASTINGS, JANOFSKY & WALKER LLP

         By:   /s/ Howard M. Privette
            Howard M. Privette
         Attorneys for Defendant STUART H. WOLFF

-2-

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................. 1

II.    SPECIAL VERDICT FORM:  JURY FINDINGS ......................... 4

    A.     Mr. Wolff's Potential Liability Under the Federal Securities Laws .................................................................................... 4

        1.     The Jury's Findings Regarding Misstatements or Omissions ................................................................. 4

        2.     The Jury's Findings of Forward-Looking Statements & Meaningful Cautionary Language ............................... 5

        3.     The Jury's Findings of Forward-Looking Statements & Scienter ...................................................................... 5

        4.     The Jury's Findings With Respect to Section 20(a) ............ 6

    B.     Damages .......................................................................... 6

III.   THE REFORM ACT'S MANDATED REDUCTION OF ANY DAMAGES BASED ON THE JURY'S VERDICT ....................... 8

    A.     Application of The Percentage of Responsibility Reduction .............. 9

    B.     Reduction Based On The Dollar Value of Other Defendants' Settlements ................................................................... 11

IV.    MR. WOLFF'S SEC SETTLEMENT ...................................... 13

V.     CONCLUSION ............................................................... 14

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Akzo Nobel Coatings, Inc. v. Aigner Corp.,
    197 F.3d 302 (7th Cir. 1999)...................................................................... 11

Basic, Inc. v. Levinson,
    485 U.S. 224 (1998) .................................................................................... 14

Dura Pharms., Inc. v. Broudo,
    544 U.S. 336 (2005) ...................................................................................... 4

Franklin v. Kaypro Corp.,
    884 F.2d 1222 (9th Cir. 1989)...................................................................... 3

In re Broadcom Corp. Sec. Litig.,
    2005 WL 1403756 (C.D. Cal. June 3, 2005)) .............................................. 7

In re Cutera Sec. Litig.,
    610 F.3d 1103 (2010) .................................................................................... 5

In re Refco, Inc.,
    No. 05 Civ. 8626(GEL), 2007 WL 57872 (S.D.N.Y. Jan. 9, 2007) ........... 12

In re Worldcom, Inc. Sec. Litig.,
    2005 U.S. Dist. LEXIS 2603 (S.D.N.Y. Feb. 22, 2005) ............................ 14

In re Zumiez Inc. Sec. Litig.,
    No. C07-1980-JCC, 2009 WL 901934 (W.D. Wash. Mar. 30, 2009) ........... 6

Layne v. United States,
    460 F.2d 409 (9th Cir. 1972)...................................................................... 13

MacKethan v. Burrus, Cootes and Burrus,
    545 F.2d 1388 (4th Cir. 1976)...................................................................... 13

Zucco Partners, LLC v. Digimarc Corp.,
    552 F.3d 981 (9th Cir. 2009)........................................................................ 4

**STATUTES**

15 U.S.C. § 78u-4(f)(7)(B) .............................................................................. 2

15 U.S.C. § 78u-4(g)(7)(B) ......................................................................... 8, 11

15 U.S.C. § 78u-4(g)(7)(B)(ii) ....................................................................... 11

15 U.S.C. § 78u-5(c)(1)(A) .............................................................................. 5

15 U.S.C. § 78u-5(c)(1)(B).............................................................................. 6

-ii-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This motion seeks a statutory offset.  Prior to trial, Lead Plaintiff California States Teachers Retirement System (CalSTRS) and the plaintiff Class[1] recovered approximately $130,000,000 in this case from settlements with other defendants.  In addition, in settling related claims with the SEC, Mr. Wolff agreed to liquidate his assets (including his family's home) and pay $11,900,462.35, plus interest, which will be paid out to Class members through a SEC disgorgement plan.  CalSTRS and the Class sought an even bigger judgment against Mr. Wolff by forcing this case to trial.  However, upon taking into account the statutory requirement that any recovery at trial must be reduced because of the prior settlements, the jury's findings in the Special Verdict establish that **Mr. Wolff is not and cannot be liable to CalSTRS and the Class for damages in this case**.

Out of twenty-two documents challenged by CalSTRS and the Class at trial, the jury found only five misstatements for which Mr. Wolff might potentially be liable for damages under Sections 10(b) or 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").[2]  The jury also determined the total per-share losses it found were caused by the five misstatements in question.  Applying the jury's findings to the shareholder transactions data provided by the claims administrator in

---

[1]  The plaintiff Class in this case is comprised of:  "All persons or entities (excluding defendants, any members of their immediate families, any person, firm, trust, corporation, present or former officer, director, or other individual or entity in which any Defendant has a controlling interest or which is affiliated with any of the Defendants, and any legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any excluded party), who purchased Homestore.com, Inc. stock from January 1, 2000 through December 21, 2001."  See Final Pretrial Conference Order (Dkt. No. 1260 at 1).

[2]  Mr. Wolff is or will also be filing a renewed motion for judgment as a matter of law under Rule 50(b).  Thus, while this motion is based on the fact that the findings in the Special Verdict and the damages-reduction requirements of the Private Securities Litigation Reform Act require judgment in his favor, Mr. Wolff also maintains that there was an insufficient evidentiary record received at trial to support the jury's findings with respect to matters that are the subject of his Rule 50 motions.

this case, the total damages to the Class in this case could be, at most, **$64,695,945**. In other words, by virtue of its prior settlements in this case, the Class has already recovered far more than the amount of any damages associated with the jury's findings at trial.  As a result, no further damages may be recovered from Mr. Wolff.

In the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), Congress mandated that where there is a settlement with a defendant prior to final verdict or judgment, and the case proceeds against another defendant, "the verdict or judgment **shall be reduced**" in light of the prior settlement.  See 15 U.S.C. § 78u-4(f )(7)(B) (emphasis added).  Congress also established how the Court must apply this reduction – the statute requires that any damages based on the jury's Special Verdict must be reduced by the ***greater of***:  (1) the amount of the settling defendant's proportional share of liability (as determined at trial); or, (2) the dollar value of the settling defendant's prior settlement.  Id.  A primary policy behind this mandatory methodology is to allow for only a single satisfaction of the damages arising from the claims of the Class.

In this case, application of the statutory damages-reduction methodology to the findings in the Special Verdict mandates the following result:

| DAMAGES REDUCTION REQUIRED BY THE REFORM ACT | |
| --- | --- |
| $64,695,945 | Maximum Class Damages Based on Special Verdict |
| (Minus) | |
| $27,563,856 | Proportional Responsibility Reduction (Giesecke, Shew, Tafeen) |
| (Minus) | |
| $121,437,263 | Reduction for Dollar Value of Other Settlements (from defendants other than Giesecke, Shew & Tafeen) |
| -$84,305,174 ($0.00) | **Maximum Class Recovery From Mr. Wolff** |

- 2 -

1    As set forth in this table, the Class has recovered amounts in settlement

2    that far exceed all of the losses that the jury found were caused by the five

3    misstatements for which Mr. Wolff could potentially be liable.  As a result, the

4    Class is not entitled to any further recovery in this case.  Mr. Wolff's liability to the

5    Class pursuant to the Special Verdict, therefore, is $0.00.  See Franklin v. Kaypro

6    Corp., 884 F.2d 1222, 1230-31 (9th Cir. 1989) (plaintiff is entitled to only one

7    satisfaction for a single injury).

8    Although Plaintiffs failed at trial to establish a right to any damages

9    from Mr. Wolff in this case, it should be noted that they are still in line for a

10    significant financial recovery from Mr. Wolff through his SEC settlement.  Put

11    another way, Mr. Wolff will not walk away scot-free from this case.  In addition to

12    his present incarceration, Mr. Wolff's assets are being sold to pay the SEC

13    judgment – $11,900,462.35 that will be paid out to Homestore shareholders who

14    are members of the Class in this case.  As set forth below, that is considerably more

15    money than any other individual defendant has paid to the Class in this case.[3]

16    In sum, not only is judgment in favor of Mr. Wolff required by law, it

17    is the fair and just result in this case.  Plaintiffs refused to settle with Mr. Wolff.

18    Instead, CalSTRS and the Class gambled that they could convince the jury at trial

19    to give them a huge judgment that they could hold over Mr. Wolff's head for the

20    rest of his life.  They failed.  The jury made its findings, and based on those

21    findings, CalSTRS and the Class are simply not entitled to anything more than the

22    inarguably substantial recoveries they have already obtained in this case.  Under the

23    circumstances, Mr. Wolff respectfully requests that judgment be entered in his

24    favor.

25

26    [3]  Obviously, while unnecessary because of the complete reduction in damages required

27    under the Reform Act based on the prior settlements in this case, a credit for Mr. Wolff's SEC settlement would also be appropriate and would otherwise have to be taken into

28    account in any judgment in this case.

MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT STUART H. WOLFF BASED ON JURY VERDICT AFTER TRIAL

## II.    SPECIAL VERDICT FORM:  JURY FINDINGS

### A.    Mr. Wolff's Potential Liability Under the Federal Securities Laws

On February 24, 2011, the jury reached a unanimous verdict on the 13 Questions in the Special Verdict Form.  (See Dkt. No. 1362.)  Although CalSTRS, on behalf of itself and the Class, asserted that Mr. Wolff should be liable under Sections 10(b) and/or 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") for alleged misstatements in twenty-two specified documents, the jury ultimately found only five such misstatements for which Mr. Wolff could be liable in this case.  The jury's findings are summarized as follows:

#### 1.    The Jury's Findings Regarding Misstatements or Omissions

For each Question in the Special Verdict (except for Question No. 12), the Special Verdict lists twenty-two challenged documents the jury was asked to review as the alleged basis for Plaintiffs' claims in this case (the "Challenged Statements").  (See Dkt. No. 1362 at 2.)  Based on its response to Question No. 1 in the Special Verdict, the jury made a finding that no material misstatements or omissions were made in twelve of the twenty-two Challenged Statements.[4]  Based on those findings, there could be no liability to the Class for violations of the Exchange Act with respect to those twelve Challenged Statements.  See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (claim under Section 10(b) requires that the defendant made a material misrepresentation or omission); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009) (Section 20(a) claim summarily dismissed if Section 10(b) violation not established).

---

[4]  Specifically, the jury found no material misstatements or omissions for Challenged Statements Nos. 1-10, 19, and 22.

- 4 -

2.      **The Jury's Findings of Forward-Looking Statements & Meaningful Cautionary Language**

Of the ten remaining Challenged Statements, the jury found in response to Question No. 2 that each misstatement it identified in response to Question No. 1 was forward-looking in nature.  (See Dkt. No. 1362 at 3-4.) Additionally, the jury found that two of those ten Challenged Statements were accompanied by meaningful cautionary language.  (Id.)[5]  There can be no liability for forward-looking statements that are accompanied by meaningful cautionary language.  See 15 U.S.C. § 78u-5(c)(1)(A); In re Cutera Sec. Litig., 610 F.3d 1103, 1112-13 (2010).  Because two of the misstatements found in the Challenged Statements were expressly found to be forward-looking statements that were accompanied by meaningful cautionary language, Mr. Wolff cannot be liable for those two Challenged Statements (12 and 20).  Accordingly, after applying the law to the jury's findings in Question Nos. 1 and 2, only eight Challenged Statements remained as potential bases for Plaintiffs' claims.

3.      **Jury's Findings of Forward-Looking Statements & Scienter**

In response to Question No. 3, the jury found that Mr. Wolff made five of the remaining eight statements it found to be false or misleading.  (Dkt. No. 1362 at 4-5.)[6]  In Question No. 4, the jury also found Mr. Wolff acted recklessly – not knowingly – in making three of those five statements.[7]  As such, Mr. Wolff cannot be liable under the securities laws for those three Challenged Statements (14, 16 & 21), because Plaintiff did not prove the requisite state of mind under the relevant

---

[5]  The jury found that the statements it found to be false or misleading in Challenged Statements Nos. 11-18 and 20-21 were forward-looking statements.  The jury found that Statements Nos. 12 and 20 were accompanied by meaningful cautionary language.

[6]  The jury found that Mr. Wolff made the misstatements it found in Challenged Statements Nos. 11, 13, 15, and 17-18.

[7]  The jury found that the misstatements it found in Challenged Statements Nos. 11, 13, and 15 were made recklessly by Mr. Wolff.

- 5 -

1   provision of the Reform Act's safe harbor for forward-looking statements.  See 15

2   U.S.C. § 78u-5(c)(1)(B) (forward-looking statement must be made with "actual

3   knowledge that the statement was false or misleading"); In re Zumiez Inc. Sec.

4   Litig., No. C07-1980-JCC, 2009 WL 901934, at *5 (W.D. Wash. Mar. 30, 2009)

5   (liability does not attach for forward-looking statements made recklessly).

6          Under the circumstances, Challenged Statements Nos. 17 and 18 are

7   the only Challenged Statements for which Mr. Wolff could potentially be liable

8   under Section 10(b).

9          **4.     The Jury's Findings With Respect to Section 20(a)**

10         The jury found that the false or misleading statements in the three

11  remaining Challenged Statements were made by someone other than Mr. Wolff.[8]

12  For each of those statements, however, the jury found in response to Questions Nos.

13  6-9 that Mr. Wolff was a "controlling person" of the person making those

14  statements.  (Dkt. No. 1362 at 8-11.)  Therefore, the jury found that Mr. Wolff

15  could potentially be liable for violations of Section 20(a) for Challenged Statements

16  Nos. 14, 16, and 21.

17         In sum, based on the jury's findings, Mr. Wolff could potentially be

18  liable for damages under the Exchange Act *only* for Challenged Statements Nos.

19  14, 16, 17, 18, and 21 (*i.e.*, five of the Challenged Statements).  Based on the jury's

20  findings, Mr. Wolff can *not* be liable to the Class for the other seventeen alleged

21  violations of the Exchange Act brought to verdict.

22         **B.     Damages**

23         The jury also determined the total per-share dollar loss it found to have

24  been caused by each of these five Challenged Statements for which Mr. Wolff

25  could potentially be liable.  (Dkt. No. 1362 at 15-16.)  In response to Question

26  No. 13, the jury found the following losses per share:

27  ───────────────────

28  [8]  In response to Question No. 3, the jury found that Mr. Wolff did not make the misstatements it found in Challenged Statements Nos. 14, 16, and 21.

MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT STUART H. WOLFF BASED ON JURY VERDICT AFTER TRIAL

| Challenged Statement No. | Total Loss Per Share |
|:---:|:---:|
| 14 | $0.437 |
| 16 | $0.437 |
| 17 | $0.6555 |
| 18 | $0.6555 |
| 21 | $0.437 |
| **Total** | **$2.622** |

Applying these findings to the shareholder transactions data provided by the claims administrator, the maximum ***total damages*** based on the jury's findings has been determined to be **$64,695,945**.

This maximum Class damages figure was calculated under the direction of Meir Statman, Ph.D, Mr. Wolff's damages expert in this case.  (See Declaration of Meir Statman, Ph.D ("Statman Decl."), provided as Exhibit A to the accompanying Declaration of Howard M. Privette ("Privette Decl.").)  Dr. Statman used the shareholder transactions data provided by the claims administrator,[9] and applied the per-share loss values derived from the Special Verdict to calculate damages for investors who purchased during the Class Period.  (Id. ¶ 19.)[10]  As explained in detail in Dr. Statman's accompanying declaration, ignoring solely for the purposes of this motion that post-verdict resolution of individualized issues

_____

[9]  As the Court ordered in its January 25, 2011 Order on the parties' motions *in limine*, the "claims data" may be used to supply the information required to convert the jury's per-share findings into a reliable and accurate total damage figure.  (Dkt. No. 1301, at 21 (citing In re Broadcom Corp. Sec. Litig., 2005 WL 1403756 (C.D. Cal. June 3, 2005)).)

[10]  As Plaintiffs' damages expert did when estimating damages in this case, for an investor with multiple purchases and sales of Homestore stock during the Class Period, Dr. Statman netted that individual investor's Class Period gains against that same investor's Class Period losses.  Compare Privette Decl., Ex. A, at ¶¶ 20-21 (Statman Decl.) with Privette Decl., Ex. B, at 135:24-137:15 (Reporter's Transcript of Jury Trial, Day 5 (Nettesheim Testimony)).

MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT STUART H. WOLFF BASED ON JURY VERDICT AFTER TRIAL

(such as reliance) would likely eliminate certain investors as qualified claimants (and thereby *reduce* the aggregate amount), the maximum Class damages based on the jury's findings amount to an aggregate total of **$64,695,945**. (Id., ¶ 5.)

## III.   THE REFORM ACT'S MANDATED REDUCTION OF ANY DAMAGES BASED ON THE JURY'S VERDICT

In the Reform Act, Congress established a mandatory formula for reducing a non-settling defendant's liability for damages under the Exchange Act in order to account for a prior settlement with another defendant.  In this case, while refusing to settle with Mr. Wolff, Lead Plaintiff CalSTRS, on behalf of itself and the Class, previously settled the claims in this case with multiple other defendants (the "Settling Defendants").[11]  Under the controlling statute, the judgment between CalSTRS and the Class, on the one hand, and Mr. Wolff on the other hand, must reflect the total recovery already obtained by CalSTRS and the Class in this case.

The Reform Act's damages-reduction provision provides that for each Settling Defendant that "enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of (i) an amount that corresponds to the percentage of responsibility of that [settling defendant]; or (ii) the amount paid to the plaintiff by that [settling defendant]."  15 U.S.C. § 78u-4(g)(7)(B).  With respect to the allegations and claims brought in this action, Lead Plaintiff CalSTRS, on behalf of itself and the Class, settled with the following Settling Defendants prior to the final verdict in this case:

- **Homestore.com, Inc**. (Final Judgment and Order of Dismissal With Prejudice Re: Homestore.com, Inc., May 14, 2004 (Dkt. No. 451));
- **Joseph Shew** (Final Judgment and Order of Dismissal With Prejudice Re: Joseph Shew, Sept. 16, 2005 (Dkt. No. 873));

---

[11]  The Class that settled with the Settling Defendants is the same Class that brought claims to verdict against Mr. Wolff.

MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT STUART H. WOLFF BASED ON JURY VERDICT AFTER TRIAL

1  - **John M. Giesecke, Jr.** (Final Judgment and Order of Dismissal With
2  Prejudice Re: Joseph Shew, Sept. 16, 2005 (Dkt. No. 874));
3  - **John DeSimone** (Final Judgment and Order of Dismissal With
4  Prejudice Re: John DeSimone, Sept. 16, 2005 (Dkt. No. 875));
5  - **Sophia Losh** (Final Judgment and Order of Dismissal With Prejudice
6  Re: Sophia Losh, Sept. 16, 2005 (Dkt. No. 872));
7  - **Jeffrey Kalina** (Final Judgment and Order of Dismissal With
8  Prejudice Re: Jeffrey Kalina, Sept. 16, 2005 (Dkt. No. 876));
9  - **David M. Rosenblatt** (Final Judgment and Order of Dismissal With
10  Prejudice Re: David M. Rosenblatt, Dec. 15, 2005 (Dkt. No. 900));
11  - **PricewaterhouseCoopers LLP** (Order Approving Final Settlement,
12  Jan. 9, 2006 (Dkt. No. 908));
13  - **Time Warner, Inc.** (Order Approving Final Class Partial Settlement
14  with Time Warner, Dec. 4, 2007 (Dkt. No. 1094));
15  - **L90, Inc.** (Order Approving Final Class Partial Settlement with L90,
16  Dec. 4, 2007 (Dkt. No. 1094));
17  - **Peter Tafeen** (Order Approving Final Class Partial Settlement with
18  Peter Tafeen, Dec. 4, 2007 (Dkt. No. 1094)); and,
19  - **Cendant Corporation** (Final Judgment and Order of Dismissal With
20  Prejudice Regarding Cendant Corporation and Richard Smith, Mar. 23,
21  2009 (Dkt. No. 1170)).
22  For the convenience of the Court, copies of the written settlement
23  agreements for these defendants are provided as Exhibits D-O to the accompanying
24  Declaration of Howard M. Privette.
25  **A.     Application of Percentage of Responsibility Reduction**
26  For each of the five actionable Challenged Statements, the jury made a
27  determination of responsibility for the Settling Defendants.  (Dkt. No. 1362 at 13.)
28

- 9 -

In response to Question No. 11, the jury made the findings set forth in the following table:

| Challenged Statement No. | Total Damages Per Share | J. Giesecke | P. Tafeen | J. Shew | Total Deduction |
|---|---|---|---|---|---|
| 14 | $0.437 | 25% | 5% | 20% | **50%** |
| 16 | $0.437 | 25% | 5% | 20% | **50%** |
| 17 | $0.6555 | 5% | 25% | 5% | **35%** |
| 18 | $0.6555 | 5% | 15% | 5% | **25%** |
| 21 | $0.437 | 25% | 5% | 20% | **50%** |

Dr. Statman took the jury's proportional responsibility findings and calculated the respective shares of the corresponding damages that would be attributable to Messrs. Giesecke, Shew, and Tafeen.  (Statman Decl., ¶¶ 24-27.)

Applying the percentages of responsibility assigned by the jury, out of the maximum damage amount of $64,695,945, John Giesecke would be responsible for $10,968,850, Joe Shew would be responsible for $9,029,967, and Peter Tafeen would be responsible for $7,565,039.  See Statman Decl., ¶ 6.  Comparing these amounts with the amounts CalSTRS and the Class agreed to take from these three individuals in settlement reveals the following:

| Settling Defendant | Settlement Amount | Proportional Share Amount |
|---|---|---|
| John M. Giesecke | $3,805,021 | $10,968,850 |
| Joseph Shew | $1,053,752 | $9,029,967 |
| Peter Tafeen | $2,943,910 | $7,565,039 |
| | | **$27,563,856** |

As reflected in this table, the proportional share amount for which the jury found each individual to be responsible exceeds the amount of that individual's settlement with CalSTRS and the Class.  Therefore, under the Reform Act,

- 10 -

1   Mr. Wolff is entitled to a reduction for these three Settling Defendants equal to their

2   Proportional Share Amounts because those amounts are "greater" than the

3   Settlement Amounts previously accepted by the Class.  See 15 U.S.C. § 78u-

4   4(g)(7)(B)(i).

5           Thus, as a first step, the maximum damages associated with the jury's

6   findings in the Special Verdict must be reduced from $64,695,945 to **$37,378,061**

7   ($64,695,945 - $27,563,856 = $37,378,061) to reflect these three Settling

8   Defendants' combined percentages of responsibility.

9   **B.     Reduction Based On Other Defendants' Settlements**

10          The remaining amount of possible damages associated with the jury's

11  findings in the Special Verdict, *i.e.*, $37,378,061, must be further reduced by the

12  amount each Settling Defendant other than Giesecke, Shew and Tafeen previously

13  agreed to pay to the Class.  See 15 U.S.C. § 78u-4(g)(7)(B)(ii).  Such a *pro tanto*

14  reduction in the verdict is proper for these remaining Settling Defendants because it

15  is "greater" than the percentage of responsibility as found by the jury.  Id.[12]  The

16  settlement amounts of each of these other Settling Defendants is set forth in the

17  following table:

18

19

20

21

22

23

24

25

26  [12]  The phrase "*pro tanto*" has been used to describe a situation where the verdict or
27  judgment of the non-settling defendant is reduced by the "actual amounts recovered in settlements" by the settling defendants prior to final judgment.  Akzo Nobel Coatings, Inc.
28  v. Aigner Corp., 197 F.3d 302, 307 (7th Cir. 1999) (describing *pro tanto* reduction).

- 11 -

| Settling Defendant | Settlement Amount |
|---|---|
| Homestore.com, Inc. | $91,000,000 ($13,000,000 in cash plus 20 million shares of Homestore stock valued at $78 million)[13] |
| PricewaterhouseCoopers LLP | $17,500,000 |
| John DeSimone | $177,796 |
| Jeffrey Kalina | $74,348 |
| Sophia Losh | $650,119 |
| David M. Rosenblatt | $195,000 |
| Time Warner, Inc. | $6,500,000 |
| L-90, Inc. | $1,440,000 |
| Cendant Corp. | $4,000,000[14] |
| Total | **$121,437,263** |

As set forth in this table, the total value of the settlements paid to the Class by the Settling Defendants (excluding Giesecke, Tafeen, and Shew) totaled $121,437,263 – far in excess of the damages associated with the jury's findings after trial in this case.  The remaining $37,378,061 in damages must therefore be reduced by $121,437,263 based on the "one satisfaction" rule.  See In re Refco, Inc., No. 05 Civ. 8626(GEL), 2007 WL 57872, at *3 (S.D.N.Y. Jan. 9, 2007) ("A

---

[13]  The value of the Homestore stock is calculated by multiplying the share price on March 16, 2004 (which was $3.90 at closing), by the 20 million shares of Homestore stock. March 16, 2004 was the day the Court granted final approval of the Homestore settlement. (See Order dated March 16, 2004 (Dkt. No. 390).)

[14]  As the primary element of its settlement with CalSTRS and the Class, in lieu of any direct cash payment, Cendant Corporation agreed to forego $4,000,000 from what it claimed to be its share of the Class settlements with other defendants in the case.  See Privette Decl., Ex. O, at p. 11.  Cendant also agreed not to assert any claim for damages against Mr. Wolff.  Id.  Cendant's settlement, therefore, has had the effect of boosting the recovery of the remaining class members by $4,000,000.

1  judgment credit must give nonsettling defendants credit for at least the amount of

2  the settlement for common damages, because if it did not, plaintiffs could recover

3  from both the settling and nonsettling defendants for the same damages.  The one

4  satisfaction rule also requires that nonsettling defendants receive credit for an

5  amount actually paid by settling defendants for common damages.").[15]

6           As such, **Mr. Wolff's liability to CalSTRS and the Class is $0.00**.

7  See MacKethan v. Burrus, Cootes and Burrus, 545 F.2d 1388 (4th Cir. 1976)

8  (reversing district court judgment in securities case because settlements entirely

9  offset liability of non-settling defendants after jury verdict in favor of plaintiff).

10 **IV.   MR. WOLFF'S SEC SETTLEMENT**

11          Prior to the trial of this case, Mr. Wolff entered into a settlement of

12 related claims with the SEC.  Under the terms of Mr. Wolff's agreement with the

13 SEC, a judgment was entered in the amount of $11,900,462.35, plus post-judgment

14 interest.  This amount represents "disgorgement of . . . profits gained as a result of

15 the conduct alleged in the [SEC's] Complaint, together with prejudgment interest

16 thereon."  (See Privette Decl., Ex. C at ¶ VIII ("SEC Final Judgment").)[16]

17          According to the SEC Final Judgment, all funds paid by Mr. Wolff in

18 satisfaction of his settlement shall be deposited with the Clerk of this Court.  The

19 SEC then "may propose a plan to distribute the Fund subject to the Court's

20 approval."  (Ex. C, SEC Final Judgment, ¶ VIII.B.)  In other words, these funds will

21 ultimately be distributed to investors through an SEC disgorgement plan.  This

22

---

[15]   See also Layne v. United States, 460 F.2d 409, 411 (9th Cir. 1972) ("Since the
principle is that there can be but one satisfaction for the same injury, whether or not the
released party is in fact jointly liable with the defendant against whom a judgment is
rendered is not relevant.  In either case, to prevent recovery by plaintiff of more than his
legitimate damages, 'the amount paid for the release or covenant not to sue must reduce
pro tanto the injured person's judgment against another.'").

[16]   The SEC judgment is secured by Mr. Wolff's assets, identified in an attachment, and
includes a provision concerning the SEC's rights with respect to assets not disclosed to the
SEC prior to the settlement.  See Ex. C, at ¶¶ VIII.C, VIII.D & VIII.G.

MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT STUART H. WOLFF BASED ON
JURY VERDICT AFTER TRIAL

would encompass persons who are members of the Class in this case.

Although this credit to any damages associated with the Special Verdict would be unnecessary in light of the extent of the reduction required by the Reform Act described above, it further underscores that Mr. Wolff's potential liability is more than entirely offset by the settlements that have been or will be paid to the Class, including the significant sums already coming from Mr. Wolff himself.

## V.   **CONCLUSION**

For these reasons, Mr. Wolff respectfully requests that the Court approve the [Proposed] Final Judgment submitted with this Motion, and instruct the Clerk to enter the [Proposed] Final Judgment in Favor of Mr. Wolff forthwith.[17]

DATED:  March 17, 2011    PAUL, HASTINGS, JANOFSKY & WALKER LLP

By:  _____/s/ Howard M. Privette_____
Howard M. Privette
Attorneys for Defendant STUART H. WOLFF

_____

[17] As Plaintiffs recognized prior to trial, "any issue regarding individualized knowledge, reliance and damages should be resolved in a separate proceeding" following trial of class issues. See Plaintiff's Reply Omnibus Motions in Limine, at 1:21-2:3 (citing In re Worldcom, Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 2603, at *15 (S.D.N.Y. Feb. 22, 2005) and In re Broadcom Corp. Sec. Litig., 2005 U.S. Dist. LEXIS 12118, at *10 (C.D. Cal. June 3, 2005)).).  Thus, for example, Mr. Wolff contends that a number of purchasers of Homestore stock after May 15, 2001 did not rely on the integrity of the market, and cannot establish reliance.  See Basic, Inc. v. Levinson, 485 U.S. 224, 248-49 (1998) (discussing defendants' right to rebut fraud on the market doctrine); see also Privette Decl. at ¶ 17 (providing examples of such purchasers).  Mr. Wolff maintains his right to challenge individual claimants' ability to recover damages in this case; however, the point of this motion is that, **even if all of these claimants are included** in the aggregate damages calculation, the amount of the reduction/offset to which Mr. Wolff is entitled under the Reform Act still results in zero liability and mandates judgment in Mr. Wolff's favor.  To the extent that the Court finds otherwise and this Motion is denied, then the Court must establish procedures for the requisite resolution of the individualized issues prior to entry of any other judgment.

MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT STUART H. WOLFF BASED ON JURY VERDICT AFTER TRIAL