1  JOSEPH W. COTCHETT (#36324)
   NANCY L. FINEMAN (#124870)
2  ARON K. LIANG (#228936)
   DANIEL R. STERRETT (#260290)
3  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
4  840 Malcolm Road, Suite 200
   Burlingame, California  94010
5  (650) 697-6000

6  *Counsel for Lead Plaintiff CalSTRS*
   *and the Class*

7

8

                    **UNITED STATES DISTRICT COURT**
9
              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10
                         **WESTERN DIVISION**
11

12 **In re HOMESTORE.COM, INC.** )   Master File No. 01-CV-11115 RSWL
   **SECURITIES LITIGATION**     )   (CWx)
13                               )
   ───────────────────────────── )   **PLAINTIFF CALIFORNIA STATE**
14                               )   **TEACHER RETIREMENT SYSTEMS'**
                                 )   **OPPOSITION TO STUART WOLFF'S**
15 This Document Relates To:     )   **MOTION FOR ENTRY OF**
                                 )   **JUDGMENT AND SUBMISSION OF**
16                               )   **PROPOSED JUDGMENT BY**
                                 )   **PLAINTIFF**
17 ALL ACTIONS.                  )
                                 )   **Date:      April 20, 2011**
18 ───────────────────────────── )   **Time:      10:00 a.m.**
                                 )   **Judge:     Hon. Ronald S.W. Lew**
19                                   **Courtroom: 21, 312 North Spring Street**
                                             **Los Angeles, CA 90012**
20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    The Federal Securities Act and the PSLRA Requirements. . . . . . . . 6

    B.    The Jury Verdict. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    Calculating Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    Calculating Wolff's Proportionate Liability.. . . . . . . . . . . . . . . . . 13

    E.    Calculating the Settlement Offset. . . . . . . . . . . . . . . . . . . . . . . . . 14

    F.    Calculating the Value of Homestore Stock. . . . . . . . . . . . . . . . . . 19

    G.    Plaintiffs' Proposed Judgment Incorporates All Defendants. . . . . . 20

    H.    SEC Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    I.     Individualized Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Franklin v. Kaypro*,
    884 F.2d 1222 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Harmsen v. Smith*,
    693 F.2d 932 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Broadcom Corp. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 44424 (C.D. Cal. Feb. 10, 2005). . . . . . . . . . . . . 12

*In re Broadcom Corp.*,
    2005 U.S. Dist. LEXIS 12118 (C.D. Cal. June 3, 2005). . . . . . . . . . . 14, 15

*In re Cendant Sec. Litig.*,
    109 F.Supp.2d 235 (D.N.J. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Refco Sec. Litig.*,
    2007 U.S. Dist. LEXIS 927 (S.D.N.Y. Jan. 9, 2007). . . . . . . . . . . . . . 15, 18

*In re Silicon Graphics, Inc.*,
    183 F.3d 970 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re WorldCom, Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 2603 (S.D.N.Y. Feb. 22, 2005). . . . . . . . . . . . . . 21

*Layne v. United States*,
    460 F.2d 409 (9th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McCabe v. Ernst & Young, LLP*,
    494 F.3d 418 (3rd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Merrill Lynch, Pierce, Fenner & Smith v. Dabit*,
    547 U.S. 71 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*SEC v. Zandford*,
    535 U.S. 813 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

*Singer v. Olympia Brewing Co.*,
    878 F.2d 596 (2nd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. Lenches*,
    263 F.3d 972 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. O'Hagan*,
    521 U.S. 642 (1929). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTES AND RULES

15 U.S.C.

§ 78j(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 78t(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 78u-4(f)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

§ 78u-4(f)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 78u-4(f)(2)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

§ 78u-4(f)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 78u-4(f)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

§ 78u-4(f)(7)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-18

§ 77z-2(c)(1)(B)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF
JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                      iii

## I.    INTRODUCTION

After a two and a half week jury trial, nine citizens of California found that Defendant Stuart Wolff ("Wolff") knowingly and recklessly made false and misleading statements to the investors of Homestore.com ("Homestore") and also controlled high level executives who made false statements, all of which caused Plaintiffs damage.  Nevertheless, Wolff is now asking that this Court issue a judgment in favor of Wolff, in contravention of the findings of the jury.  In his motion, Wolff does not challenge the jury's findings that Wolff violated both Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.[1]  Instead, Wolff's sole argument is that the amount of prior settlements reached in this case exceeds his liability.  Wolff's argument fails because he makes numerous erroneous assumptions and legal conclusions regarding the methodology of calculating the damages for which he is liable, the methodology of offsetting the settlement amounts, and the value of the Homestore stock.  *See* Declaration of Jane D. Nettesheim ("Nettesheim Decl.").  Filed along with this motion is a Proposed Judgment which is proposed by Plaintiff as the proper judgment for the Court to enter.[2]

**First**, Wolff improperly calculated the damages for which he is liable pursuant to the jury verdict.  In his calculation, Wolff fails to take into account the **full price inflation** for which he is responsible based upon the false and

---

[1]    Wolff has filed a Motion and Renewed Motion for Judgment as a Matter of Law or for Partial Judgment as a Matter of Law, challenging the jury verdict, said motion to be heard concurrently with this motion.  Plaintiffs have opposed the motion.

[2]    Wolff filed his motion for judgment before the parties could have any meaningful meet and confer about the proper methodology for the judgment. Wolff refers to the length of time post verdict as the reason that he filed the motion, but based upon the number of issues to be resolved by the jury verdict and the amount of time that it takes both the Claims Administrator and Plaintiffs' Damage Expert to program and run the claims data, the lapse of time was reasonable and necessary.  *See* Declaration of Nancy L. Fineman ("Fineman Decl."), ¶ 2.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

misleading statements that incorporated prior misrepresentations without correcting them.  In addition, Wolff erred by taking the inflation amount of each misrepresentation out of context.  Instead, the proper approach is to take into account the cumulative price inflation in order to make Question No. 13 (the price inflation) consistent with the jury's findings in Question No. 12 (the corrective disclosures).  *See* Special Verdict Form and Questions for the Jury, dated February 24, 2011, Question 13 (Docket No. 1362) attached as Exhibit 1 to Fineman Decl.  The jury found that those earlier misrepresentations caused a loss to Homestore shareholders and Wolff should be held liable for that cumulative inflation.  By excluding this share price decline, Wolff adopts an improperly narrow view of his liability and his analysis is contrary to the totality of the jury's findings.

**Second**, for two of the disclosure dates (September 16, 2001 and October 3, 2001) in which the jury found that Wolff had acted knowingly, Wolff calculates his liability on a proportionate basis, even though, under the law, he is jointly and severally liable for any misrepresentations that he made knowingly.  *See* 15 U.S.C. § 78u-4(f)(2)(A); Fineman Decl., Ex. 1, Question 4.  Therefore, it is inappropriate for Wolff to calculate his liability for those two misrepresentations on a proportionate basis.  Ms. Nettesheim corrects Wolff's error in her analysis.

**Third**, Wolff, through his expert (Meir Statman), calculates the damages for which he is liable on a per-share **claimant-by-claimant** basis.  However, without the assistance of his expert, Defendant calculates the settlement offset on an **aggregate** basis, including claimants who received settlement funds but have no right for recovery against Wolff.  This calculation is contrary to the Order of this Court and the language of the PSLRA which requires calculation on a per-share basis based upon the amount paid to plaintiff not plaintiff**s**.  Order on Motions in Limine No. 5; 15 U.S.C. § 78u-4(f)(B)(ii) (reduce judgment based on "the amount paid to the plaintiff by that covered person.").  There is no logical or legal basis for using an aggregate offset against a claimant-by-claimant damage analysis and

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF
Case No. 01-cv-11115 RSWL (CWx)                                                    2

it provides an inequitable result.  As this Court has found, based upon Wolff's own argument, this case should be viewed on a claimant-by-claimant basis. Although the case was brought as a class action, both damages and the settlement offset should be viewed from the perspective of each individual claimant.  Wolff's analysis compels a contrary result and should be rejected by this Court.

**Fourth**, Wolff has overvalued the stock component of the settlement with Homestore.  The stock should be valued at $2.06, which is the amount that the Court held was the amount to be paid to each claimant with a pro-rata distribution of less than 1.0000 share of stock and is also the stock price used to estimate the settlement value for the attorney fee award for the Homestore settlement.  *See* Order Authorizing Distribution of Settlement Funds to Class Members and Class Counsel's Renewed Application for Partial Reimbursement of Expenses and Fees, dated June 6, 2005 at 1:12-14; 4:8-14 (Docket No. 845) attached as Exhibit 2 to the Fineman Decl.  Wolff's proposed date of March 16, 2004, with a stock price of $3.90 has no support in the record.

These errors, as well as others described herein and in the Declaration of Jane D. Nettesheim, are important and have a meaningful impact on the judgment.[3] The proposed judgment submitted by Plaintiffs properly calculates the damages consistent with the jury's verdict and applicable law.  The Court should enter Plaintiffs' proposed judgment rather than the proposed judgment submitted by Wolff.

---

[3]      There are other differences between CalSTRS' expert and Wolff's expert besides the four main differences discussed in this brief, such as the fact that CalSTRS' expert used a First In First Out ("FIFO") instead of a Last In First Out ("LIFO") approach.  *See* Nettesheim Decl., ¶¶ 24-25, fn. 16.  In addition, Wolff's expert erroneously calculated the effect of the corrective disclosure on October 3, 2001, erroneously calculated the number of eligible claimants and double counted the $4 million Cendant settlement.  *See* Nettesheim Decl., ¶ 8, fn. 6, ¶ 33, fn. 24, ¶ 34, fn. 26, ¶¶ 37-38, ¶ 39, fn. 32.  These errors are corrected in Ms. Nettesheim's analysis but do not have as significant an impact on the damages calculation as the ones highlighted by Plaintiffs in this brief.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                          3

## II.      PROCEDURAL BACKGROUND

On and after December 27, 2001, numerous class actions were filed against Homestore and other defendants for securities fraud.  The actions were consolidated for all purposes by an order entered on February 22, 2002.  *See* Order on Stipulation for Consolidation of Securities Fraud Class Actions, dated February 22, 2002 (Docket No. 24).  On March 25, 2002, the California State Teachers Retirement System ("CalSTRS") was appointed Lead Plaintiff.  *See* Stipulation and Order Appointing California State Teachers Retirement System as Lead Plaintiff Pursuant to § 21D(A)(3)(b) of the Securities Exchange Act of 1934, dated March 25, 2002 (Docket No. 34).  On May 30, 2002, the law firm of Cotchett, Pitre & McCarthy was appointed Lead Counsel for CalSTRS and the Class.  *See* Order Approving Lead Plaintiff's Selection of Cotchett, Pitre, Simon & McCarthy as Lead Counsel (Docket No. 50).  A class was certified on September 29, 2003, and the class was defined as follows:

> "All persons or entities (excluding defendants, any members of their immediate families, any person, firm, trust, corporation, present or former officer, director, or other individual or entity in which any Defendant has a controlling interest or which is affiliated with any of the Defendants, and any legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any excluded party), who purchased Homestore.com, Inc. stock from  January 1, 2000 through December 21, 2001."

*See* Order Granting Plaintiff's Renewed Motion for Class Certification, dated September 29, 2003 (Docket No. 279).

On March 7, 2003, in ruling on motions to dismiss, the Court also dismissed certain Defendants, but formal judgments were not entered.  *See* Order Regarding Motions to Dismiss (Docket No. 210).  Prior to trial, CalSTRS entered into settlements with numerous Defendants and the Court entered judgments

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF
JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF
Case No. 01-cv-11115 RSWL (CWx)** 4

accordingly.  The Claims Administrator has distributed the settlement monies (except for the Cendant settlement).  Fineman Dec., ¶ 5 and Exs. 2-6 (Orders re Distribution, Docket Nos. 845, 913, 1094, 1171, 1182).  Pursuant to the Court's instruction and for the sake of completeness, Plaintiffs' Proposed Judgment provides for the resolution of the action against each named Defendant.

On January 25, 2011, the trial of Defendant Wolff, the only remaining defendant, began.  (Dkt No. 1302).  This Court, in ruling on Wolff's Motion in Limine No. 5, ruled:

> However, with respect to the issue of Nettesheim's use of the trading model to calculate damages, the Parties both acknowledge that the real data is available here and that they can make estimates with this data and present per-share damages to the jury.  Given the potential issues with using a trading model that are outlined in *In re Broadcom Corp. Securities Litigation*, such as potential for error and questionable accuracy, along with the fact that the data is available here given the prior settlements in this Action, the Court orders that the Parties use a per-share presentation of damages.  2005 WL 1403756 (C.D.Cal. June 3 2005) (holding that per share damages estimate should be used because "the Court can easily use the claims administration process to supply the remaining information to calculate an accurate, reliable total damage figure and payout.")

*See* Order on Motions in Limine, dated January 25, 2011 at 21:7-23 (Docket No. 1301), attached as Exhibit 7 to the Fineman Decl.  The testimony by Plaintiffs' expert, Jane D. Nettesheim, and Defendant's expert, Meir Statman, conformed to the Court's order.

On February 24, 2011, a jury of nine completed and signed a Special Verdict Form.  *See* Fineman Decl., Ex. 1.  The Special Verdict Form provided information about the price inflation of Homestore stock over time on a per-share

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                                5

1  basis and responded to questions regarding the degree of Wolff's malfeasance in

2  regards to that price inflation.  *Id.*

3      The jury found that there were ten (10) false statements (Verdict Question

4  No. 1); Wolff made or was substantially involved in the preparation of five (5) of

5  the challenged statements (*id.* No. 3); and that Wolff was a controlling person of

6  the person making the false statement for four (4) statements (*id.* No. 6).  As a

7  matter of law, the jury found that Wolff had violated both Sections 10(b) and 20(a)

8  of the Securities Exchange Act of 1934.

9  **III.   LEGAL ARGUMENT**

10      **A.   The Federal Securities Act and the PSLRA Requirements**

11      In 1933, Congress began enacting securities laws to "insure honest

12  securities markets and thereby promote investment confidence. . . ."  *SEC v.*

13  *Zandford*, 535 U.S. 813, 819 (2002) (citing *United States v. O'Hagan*, 521 U.S.

14  642, 658 (1929)).  The securities laws were enacted to provide greater protection

15  than that provided by common law fraud.  "An important purpose of the federal

16  securities statutes was to rectify perceived deficiencies in the available

17  common-law protections by establishing higher standards of conduct in the

18  securities industry."  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389

19  (1983); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 244 n.22 (1988) ("Actions

20  under Rule 10b-5 are distinct from common-law deceit and misrepresentations

21  claims . . . and are in part designed to add to the protections provided investors by

22  the common law.").  The Supreme Court has consistently affirmed that "the statute

23  should be construed 'not technically and restrictively, but flexibly to effectuate its

24  remedial purposes.'"  *Zandford*, 535 U.S. at 819 (citing *Affiliated Ute Citizens of*

25  *Utah v. United States*, 406 U.S. 128, 151 (1972)).

26      Section 10(b) of the Securities Exchange Act of 1934 forbids any person

27  from using or employing, in connection with the purchase or sale of any security

28  "any manipulative or deceptive device or contrivance in contravention of such

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                          6

rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  SEC Rule 10b-5 states that it is illegal for any person to: (1) employ any device, scheme, or artifice to defraud, (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Section 20(a) states that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."  15 U.S.C. § 78t(a).

In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA").  "The PSLRA affects procedural aspects, but not the substantive elements of a securities fraud action."  *Smith v. Lenches*, 263 F.3d 972, 976 (9th Cir. 2001) (citing *In re Silicon Graphics, Inc.*, 183 F.3d 970, 977 (9th Cir. 1999)). Most notably, the PSLRA enacted heightened pleading standards, prescribed new procedures for the appointment of lead plaintiffs and lead counsel, limited recoverable damages and attorney's fees, provided a safe harbor for forward looking statements, mandated the imposition of sanctions for frivolous litigation, and authorized a stay of discovery pending resolution of a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-321 (2007). **Nothing "in the PSLRA, however, casts doubt on the conclusion 'that private securities litigation [i]s an indisputable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital**

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF
Case No. 01-cv-11115 RSWL (CWx)                                                    7

**markets."** *Id.* at 321, fn. 4 (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 81 (2006) (emphasis added)).

The PSLRA, 15 U.S.C. § 78u-4(f)(B), provides for a reduction of the judgment because of settlements.[4]   The relevant provision provides:

> If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of –
>
> > (i) an amount that corresponds to the percentage of responsibility of that covered person; or
> >
> > (ii) the amount paid to the plaintiff by that covered person.

15 U.S.C. § 78u-4(f)(B).

Accordingly, the judgment in this case should be consistent with the principles of protecting investors, encouraging honest securities markets and ensuring that each individual aggrieved claimant is made whole.

**B.    The Jury Verdict**

The Court and the parties spent a great deal of time working on the proper verdict to submit to the jury.  In answering the jury questions, the jury found that Wolff had violated both Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  The jury found that twice in 2001, Wolff knowingly made false and misleading misstatements and omissions of material fact, and found that three times in 2001, Wolff controlled a person who made false and misleading statements and omissions of material fact.  Wolff does not dispute that a jury of his peers has determined, as a matter of fact, that Wolff intentionally misled the shareholders of the company that he served as Chief Executive Officer.  Wolff and

---

[4]     Other aspects of the PSLRA, such as the Safe Harbor Provisions, are not in dispute between the parties for purposes of the judgment based upon the jury's findings.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                            8

Plaintiff agree that the statements for which Wolff has liability under the jury verdict are Statement Nos. 17 and 18 for 10(b) liability and Statements Nos. 14, 16 and 21 for 20(a) liability.

## C.   Calculating Damages

In calculating the damages for which Wolff is liable, CalSTRS uses the total price inflation on the days for which Wolff was found liable by the jury rather than solely the new inflation attributable to that misstatement. The method of calculating the price inflation is a fundamental disagreement between the parties. For the reasons set forth below, the Court should adopt Plaintiff's calculation, as set forth in the Declaration of Jane D. Nettesheim.

The purpose of the securities laws is "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005). In *Dura*, the Supreme Court recognized that the element of loss causation was not met until someone purchased a stock at an inflated price and then sold it after that price inflation had been removed. *Id. at* 342-343. In this case, for the fraudulent misstatements and omissions for which Wolff is liable, earlier misstatements and omissions were *incorporated* into Wolff's misrepresentations and were not corrected.[5]  Based upon the way in which the jury was asked the questions, the prior price inflation must be incorporated into the damages suffered by a shareholder on that day. The jury was instructed in Jury Question 13 that "the total for all statements must not exceed the total per-share loss from Question 12." Fineman Decl., Ex. 1, Question 13. Based upon the testimony of both experts (the only evidence regarding damages), the

---

[5]    For example, on May 15, 2001, a date when both parties agree Wolff is liable under the federal securities laws, the issue is whether Wolff is liable for the cumulative inflation of Homestore stock on that day, which is $1.311 or just the additional new inflation attributed to that day, which is $0.437. *See* Fineman Decl., Ex. 1, Question 13.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

only way to interpret these numbers is for the price inflation to be cumulative; otherwise the numbers for the corrective disclosures make no sense. *See, e.g.* Trial Transcript, dated February 7, 2011 (Trial Testimony of Jane D. Nettesheim), pp. 100:13-102:6, 128:24-131:3; Trial Exhibits. 2141, 2198, attached as Exhibits 8-10 of the Fineman Decl.  Per the instruction, the jury was not allowed to put the cumulative number in the answer; therefore the Court must do so.

Wolff cites no law to support his decision to ignore the total inflation of Homestore stock on the dates the jury found he is liable under the federal securities laws.  "In order to satisfy the loss causation requirement in both typical and non-typical § 10(b) actions, the plaintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss."  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 426 (3rd Cir. 2007).  In this case, for example, the jury found that misrepresentations made on January 25, 2001 (Press release), March 30, 2001 (Form 10-K for fiscal year 2000) and April 25, 2001 (Press release) inflated the share price of Homestore by a total of $0.874.  *See* Fineman Decl., Ex. 1, Question 13.  As courts have recognized, multiple misstatements and omissions can have a cumulative effect on the price inflation of a stock.  *See, e.g. In re Cendant Sec. Litig.*, 109 F.Supp.2d 235, 265-266 (D.N.J. 2000).

As both sides agree, on May 15, 2001, Wolff is liable under Section 20(a) of the Securities Exchange Act for the filing of the 10-Q for the first quarter of 2001.  This misstatement resulted in an *additional* $0.437 in price inflation of Homestore stock, resulting in *cumulative* price inflation of $1.311.  *See* Fineman Decl., Ex. 1, Question 13.  On that date, Wolff incorporated the earlier misstatements and omissions and made no effort to correct those misrepresentations.  In fact, the jury found that, at least by that date, there were no corrective disclosures.  *See* Fineman Decl., Ex. 1, Question 12.  Moreover, Wolff cannot credibly claim he is blameless for the earlier misrepresentations that caused an inflation in Homestore's price.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                      10

1    For example, the jury found that Wolff was 70% responsible for the January 25,

2    2001 misstatement.  *See* Fineman Decl., Ex. 1, Question 13.  Under federal

3    securities laws, the only reason Wolff is not liable to investors who purchased

4    Homestore stock between January 25, 2001 and May 15, 2001 is because the jury

5    found that Wolff's misrepresentation were made recklessly and that there were

6    forward looking statements accompanied by cautionary language.  Thus as a

7    matter of law, there is no liability.  *See* 15 U.S.C. § 77z-2(c)(1)(B)(i).  However,

8    factually, the statements are still untrue or there was an omission of material fact.

9    The fact that the jury was instructed in Question 13 that the "total for all

10   statements must not exceed the total per-share loss from Question 12" reinforces

11   the conclusion that the damage amounts must be added together.  Pursuant to the

12   instructions, the jury could not have cummulated the price-share loss amounts (and

13   could only enter the new addition per-share loss amount for each statement) or

14   else the amounts entered would be greater than the total amount in question 12,

15   contrary to the Verdict Form instructions.

16        The fallacy of Wolff's approach is further demonstrated by Dr. Statman's

17   inappropriate method of "scaling down" the amount of the price inflation to reflect

18   the corrective disclosures.  *See* Declaration of Meir Statman ("Statman Decl."),

19   ¶¶ 11-12.  For example, on October 3, 2001, the date of the first corrective

20   disclosure of $0.52, the total inflation of Homestore stock was $3.2775.  *See*

21   Fineman Decl., Ex. 1, Question 13.  The appropriate methodology is to remove the

22   $0.52 total corrective disclosure from the total inflation of $3.2775.  However,

23   because Wolff claims that he is responsible for only part of the price inflation, Dr.

24   Statman develops a methodology to apportion part of that corrective disclosure to

25   "Wolff-responsible" inflation and "non-Wolff-responsible" inflation.  *See* Statman

26   Decl., ¶¶ 11-12.  This calculation should not even be conducted since Wolff is

27   liable, as a matter of law, for all of the price inflation of Homestore stock that he

28   incorporated into his misrepresentations, not just the new inflation attributable to

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                                    11

certain days.[6]  The statute, 15 U.S.C. § 78u-4(f)(B), provides that the judgment is reduced because of proportionate liability, not that a calculation is done to determine the amount of the non-settlement party's proportion of the price inflation.

In performing her damage analysis, Ms. Nettesheim used a similar methodology to Dr. Statman, except that she used the cumulative price inflation, as opposed to the "one day" price inflation used by Dr. Statman.[7]  *See* Nettesheim Decl., ¶¶ 9-18, 32-34.  Under *Dura* and its progeny, the cumulative price inflation is the proper approach since Ms. Nettesheim used all of the misrepresentations that inflated the price of Homestore stock that were affirmed and maintained by Wolff throughout the time period in question.  *Id.* at ¶¶ 9-18.  She performs the proportionate liability reduction calculation at the end.  *Id.* at ¶¶ 19-27.

Just like Dr. Statman, Ms. Nettesheim used the shareholder transaction data from the Claims Administrator in performing her calculation (although Ms. Nettesheim obtained additional data from the Claims Administrator).  *See* Nettesheim Decl., ¶¶ 4-7, 26-27.  This is consistent with the Court's January 25, 2011 Order that damages be presented on a per-share basis and actual claims data used to supply the damages suffered by each claimant.  *See* Fineman Decl., Ex. 7 (citing *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 12118 (C.D. Cal. June 3, 2005).

---

[6]     Even in performing this calculation, Dr. Statman makes an arithmetical error, as set forth in the Declaration of Jane D. Nettesheim, ¶ 23, fn. 14.

[7]     There is also a difference between Ms. Nettesheim and Dr. Statman on the number of claimants in this case.  Ms. Nettesheim used each unique Sequence Number as a separate claimant while it appears that Dr. Statman grouped together unique Sequence Numbers with the same claimant name as one claimant.  This may be an issue when, for example, a custodian makes multiple claims on behalf of different clients and may therefore appear as a single claimant.  *Compare* Nettesheim Decl.,¶ 34, fn. 26 with Statman Decl., ¶ 18, fn. 8.  The custodians are the banks, brokers and other nominees who often hold the shares for a significant number of class members.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF
JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                12

Based upon the jury verdict, Ms. Nettesheim used the cumulative inflation on the dates at issue as follows:

| Misrepresentations | Total Inflation |
|---|---|
| May 15, 2001 | $1.311 |
| August 14, 2001 | $1.9665 |
| September 6, 2001 | $2.622 |
| October 3, 2001 | $2.7575 |
| November 14, 2001 | $1.14 |

By applying the cumulative price inflation, as opposed to the "one day" price inflation, the jury determined that the total damages that Wolff is liable for is **$117.8 million**. *See* Nettesheim Decl., ¶¶ 4, 26-27.

### D.    Calculating Wolff's Proportionate Liability

This is prior to applying the PSLRA proportionate liability provision. 15 U.S.C. § 78u-4(f)(2) holds that a defendant is jointly and severally liable if the defendant "knowingly committed a violation of the securities laws" but otherwise is liable only for that proportion of the injury that the jury finds the defendant is liable for. The second error by Wolff in Dr. Statman's calculation of his liability is that he determines that Wolff is only proportionally liable on the two dates in which the jury found he knowingly violated the federal securities. *See, e.g.* Statman Decl., ¶ 26, Table 7. This is contrary to the law. In this case, Wolff was found to have knowingly violated the securities laws on <u>September 6, 2001</u> and on <u>October 3, 2001</u>. *See* Fineman Decl., Ex. 1, Question 4. 15 U.S.C. § 78u-4(f)(2)(A) states that, "Any covered person against whom a final judgment is entered in a private action shall be liable for damages **jointly and severally** only if the trier of fact specifically determines that such covered person **knowingly committed a violation of the securities laws**." (emphasis added). Therefore, Wolff is 100% liable for those misstatements. Wolff's calculation of his liability for those two misrepresentations on a proportionate basis is contrary to the law.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                        13

Additionally, Wolff is 50% liable for the violations committed on <u>May 15, 2001</u>, <u>August 14, 2001</u> and <u>November 14, 2001</u>. *Id.*, Statement Nos. 14, 16 and 21, Question 11. Ms. Nettesheim's methodology of determining proportionate liability is consistent with the approach used by Dr. Statman, correcting for Wolff's erroneous instruction to Dr. Statman to use "one day" inflation as opposed to the cumulative inflation. *Compare* Nettesheim Decl., ¶¶ 19-27; Statman Decl., ¶ 24. The principal difference is that Ms. Nettesheim used the total price inflation of Homestore stock on the dates when Wolff was deemed by the jury to have violated the federal securities laws.[8] Using this calculation, based on actual claimant data from the claims administrator, Wolff's proportionate liability is **$72.1 million**. *See* Nettesheim Decl., ¶¶ 4, 19-23, 26-27.

## E.   Calculating the Settlement Offset

Wolff's usage of the settlement offset in aggregate is inconsistent with his argument that the issue of damages must be viewed on a claimant-by-claimant basis. As this Court stated in its <u>January 25, 2011</u> Order, "the Court orders that the parties use a per-share presentation of damages." *See* Fineman Decl., Ex. 7.

This Court's opinion was premised on *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 12118 at *10 (C.D. Cal. June 3, 2005), in which Judge Gary Taylor wrote that, "Under the PSLRA, the law requires a claims administration process. The Court finds the jury can determine per share damage per day, and the Court can easily use the claims administration process to supply the remaining information to calculate an accurate, reliable total damage figure and payout." In other words, the issue of damages and providing relief to aggrieved shareholders must be determined on a claimant-by-claimant basis.

In his Motion in Limine No. 5, Wolff stated, "But in this case, especially with the refinements allowed by five "phases" of settlements over the course of

---

[8]   Additional differences are noted *supra* in footnote 3 but they do not have as significant an impact on the calculation as the primary errors set forth in this brief.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                    14

five years (most recently in 2009) – each phase accompanied by a class-wide notice and a claims submissions process – **the actual trading data of the class members in this case exists, and it is available for use in measuring damages**." *See* Fineman Decl., Ex. 11,  pg. 19:20-24 (Docket No. 1224) (*citing* Declaration of Howard M. Privette, ¶ 6) (Emphasis added).

In his trial brief, Wolff wrote:

"Plaintiffs are limited by statute to recovery of their **individual actual losses**, and therefore bear the burden to prove the *per-share amount* of any such loss proximately caused by reasonable and justifiable reliance on a false or misleading statement or omission of material fact made by Stuart Wolff with scienter, *i.e.*, individual monetary damages."

Defendant Stuart Wolff's Trial Brief, pg. 20:20-28 (emphasis added) (*citing Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999),  *Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982); *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 12118; *see also* 15 U.S.C. § 78u-4(f)(7)(B) (which refers to plaintiff in the singular rather than plaintiffs).  Had Congress meant that the offset would be against all plaintiffs rather than calculated as to each plaintiff, the statute would have so provided, but instead it uses the word "plaintiff," singular not plural.

Further, "the one satisfaction rule requires that nonsettling defendants receive credit for settling defendants' share of **common damages**, that is **damages for which both the settling and nonsettling defendants are responsible**." *In re Refco Sec. Litig.*, 2007 U.S. Dist. LEXIS 927 at *8 (S.D.N.Y. Jan. 9, 2007) (emphasis added).  "A judgment credit must give nonsettling defendants for at least the amount of the settlement of **common damages**, because if it did not, plaintiffs could recover from both the settling and nonsettling defendants for the same damages." *Id.* at *9 quoting *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2nd Cir. 1989) (emphasis added).  As Wolff acknowledges, "[t]he principle is

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                      15

1   that there can be but one satisfaction for the **same injury**."  *See Layne v. United*

2   *States*, 460 F.2d 409, 411 (9th Cir. 1972); *see also Franklin v. Kaypro*, 884 F.2d

3   1222, 1230-1231 (9th Cir. 1989) (plaintiff is entitled to only one satisfaction for a

4   single injury).

5        Wolff wants to determine the injury inflicted on each individual defendant

6   yet in terms of offset, he wants to view the Class as one monolithic entity.  This is

7   wrong.  Wolff cannot selectively pick and choose to obtain the result he wants.  A

8   consistent approach must be applied.  Since this Court, at the urging of Wolff,

9   properly calculated damages on an individual basis, the settlement offset must also

10  be calculated on an individual basis.[9]   The equities of this procedure are

11  demonstrated by the fact that almost all of the settlement monies have already

12  been distributed to class members who purchased stock throughout the Class

13  Period, January 1, 2000 through December 21, 2001.  There cannot be a re-

14  distribution of the monies based upon this judgment.

15       The analysis conducted by Ms. Nettesheim follows the rules of the PSLRA.

16  The settlement offset is governed by 15 U.S.C. § 78u-4(f)(7)(B) which states that

17  the judgment shall be reduced by the greater of:

18       (i)    an amount that corresponds to the percentage of responsibility of that

19              covered person; or

20       (ii)   the amount paid to the **plaintiff** by that covered person.

21  15 U.S.C. § 78u-4(f)(7)(B) (emphasis added).

22       As set forth above, the proportionate liability of Wolff, using the cumulative

23  price inflation method, is **$72.1 million**.  *See* Nettesheim Decl., ¶¶ 4, 19-27.  That

24  figure must then be reduced by the greater of the: (1) percentage of responsibility

25

26

27  [9]     It is telling that Dr. Statman has calculated the total damages based on a
        claimant-by-claimant analysis but does not provide any analysis regarding the
28      offset.  The offset is handled by Wolff and his counsel.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF
JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                        16

of the settling party or (2) the actual settlement amounts paid by the settling party to each individual claimant.  *See* 15 U.S.C. § 78u-4(f)(7)(B).

In this case there were numerous settling parties as set forth below, along with the amount of their settlement:

| Phase | Settling Party | Settlement Amount |
|---|---|---|
| 1 | Homestore.com | $54,200,000.00: Total<br><br>$13,000,000.00:  Cash<br>$41,200,000.00:  Homestore Stock<br><br>(Calculated at 20,0000 shares x $2.06 which is the value of Homestore stock used by this Court in its Order Authorizing Distribution of Settlement Funds) |
| 2 | Joseph J. Shew<br>John M. Giesecke, Jr.<br>John D. Desimone<br>Sophia Losh<br>Jeffrey M. Kalina<br>David Rosenblatt | $1,053,751.64*<br>$3,805,201.00*<br>$177,796.00<br>$650,119.00<br>$74,348.00<br>$195,000.00 |
| 3 | PricewaterhouseCoopers, | $17,500,000.00 |
| 4 | Time Warner, Inc.<br>Max Worldwide (fka L90)<br>Peter Tafeen | $6,500,000.00<br>$1,440,000.00<br>$25,000.00* |
| 5 | Cendant Corporation<br>Richard A. Smith | $4,000,0000.00:  Relinquishment of rights to settlement funds |

*There is no dispute between the parties that the settlement amounts paid by Joseph J. Shew, John M. Giesecke, Jr. and Peter Tafeen are significantly lower than their proportionate liability, as determined by the jury.  *See* Wolff's Motion for Entry of Judgment, pg. 12:15-18 (Docket No. 1368).  The liability of Shew, Giesecke and Tafeen is reflected in the reduction of the total liability of Wolff of **$117.8 million** to the proportionate liabilty of **$72.1 million**.  *See* 15 U.S.C. § 78u-4(f)(2)(B).  Their actual settlement payments therefore are not reflected in the settlement offset.  Wolff also double counts the Cendant/Smith settlement.  See Nettesheim Decl., ¶ 38.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF
Case No. 01-cv-11115 RSWL (CWx)

17

Having calculated the proportionate liability of Wolff on an individual claimant-by-claimant basis, Ms. Nettesheim then compares what each of those claimants should have received against what they actually received.[10]  *See* Nettesheim Decl., ¶¶ 4, 28-31.  For each claimant who received less money, pursuant to settlements, than they should have received, pursuant to the Special Verdict Form, Ms. Nettesheim calculated the difference.  *Id.*  Ms. Nettesheim then added those numbers and determined what Wolff owes to those shareholders who received less than they should have received.  *Id.*

Using the correct value of Homestore stock to value the Homestore settlement and using actual settlement amounts paid to individual claimants, Ms. Nettesheim calculated that the total value of the settlement offset is **$29.1 million**.[11]  *Id.*  By subtracting the settlement offset from Wolff's proportionate liability, the judgment should be against Wolff as he is liable to individual injured Homestore shareholders for a total of **$43.0 million**.[12]  *Id.*  This includes the reduction for proportionate liability, pursuant to 15 U.S.C. § 78u-4(f)(2)(B) and the reduction for the settlement offsets, pursuant to 15 U.S.C. § 78u-4(f)(7)(B). This provides one satisfaction for a single injury as to each individual claimant, which the law requires.  *See In re Refco Sec. Litig.*, 2007 U.S. Dist. LEXIS 927 at

[10]    In calculating the settlement offset, Ms. Nettesheim used the gross settlement funds (including attorney fees and expenses).  As such, Ms. Nettesheim's analysis overvalues the settlement as it relates to the actual dollars received by actual claimants.

[11]    Nettesheim's calculation values the Homestore stock at $2.06, the amount set forth in this Court's Order Authorizing Distribution of Settlement Funds to be paid to claimants who own less than 1.0000 share of stock and which is also the stock price used to estimate settlement value for the total attorney fee award for the Homestore settlement.  *See* Fineman Decl., Ex. 2.

[12]    **If this Court agrees that Wolff's "one day" inflation is appropriate instead of the cumulative inflation on the dates that Wolff is liable for violating the federal securities laws, the total damages that Wolff is liable for, applying the offset on a claimant-by-claimant basis, is $23.5 million.  *See* Nettesehm Decl., ¶¶ 8, 39.  If this Court accepts of all Wolff's assumptions regarding the calculation of damages, the total damages Wolff is liable for $17.0 million.  *Id.***

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

*8; *Layne v. United States*, 460 F.2d 409 at 411; *see also Franklin*, 884 F.2d 1222 at 1230-1231 (plaintiff is entitled to only one satisfaction for a single injury).

## F.    Calculating the Value of Homestore Stock

Wolff's valuation of Homestore stock is inflated because he overvalues the price of the Homestore stock.  Wolff values the Homestore stock received in the settlement as of <u>March 16, 2004</u>, the date the settlement with Homestore received final approval, which amount is $3.90.  *See* Wolff's Motion for Entry of Judgment, fn. 13 (Docket No. 1368).

The appropriate valuation of $2.06 per share, which number was used by Ms. Nettesheim, is based on this Court's Order Authorizing Distribution of Settlement Funds to Class Members.  *See* Fineman Decl., Ex. 2.  In that Order, the Court used <u>May 5, 2005</u> as the date of valuation for Homestore shares for those individuals who would receive less than 1.0000 share of Homestore stock in the settlement distribution.  *Id.*, at 4:8-14; *see also* Nettesheim Decl., ¶ 28, fn. 20.  In addition, the Court used the share price on <u>May 5, 2005</u> as the basis to value the settlement to see the percentage of the settlement the attorneys received in fees.

Based upon the price of Homestore common stock at the close of the market on Thursday, May 5, 2005, the total attorneys fees award is $2,730,750.  This is approximately 5.04% of the settlement value as of May 5, 2005, . . . .

Fineman Decl., Ex. 2 at 1:12-14.

On <u>May 5, 2005</u>, the price of Homestore stock closed at $2.06 per share. *See* Fineman Decl., Ex. 2.  If this Court was to use <u>June 6, 2005</u> for valuation purposes, the date when the Court issued its Order Authorizing Distribution of Settlement Funds to Class Members, the price of Homestore stock closed at $1.89 per share, further reducing the value of the Homestore settlement.  The <u>June 6, 2005</u> date has just as much justification as Wolff's proposed date.  The appropriate value to use is the value already determined by this Court – the $2.06 per share.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                                                                       19

1   Since Wolff relies on an inflated value of Homestore stock to conclude that

2   the Homestore settlement was valued at $91 million, Wolff's settlement valuation

3   as it relates to Homestore should be rejected.  *See* Wolff's Motion for Entry of

4   Judgment, pg. 12:1-4, fn. 13.  Instead, the appropriate valuation of Homestore

5   stock for purposes of the settlement offset is **$41.2 million**.  *See* Nettesheim Decl.,

6   ¶ 28-30, fn. 20.

7       **G.   Plaintiffs' Proposed Judgment Incorporates All Defendants**

8   CalSTRS understands that this Court requested the proposed judgment

9   incorporate all of the Defendants in this case.  CalSTRS has submitted a proposed

10  judgment that does that.  CalSTRS believes that its judgment meets the Court's

11  request, as well as appropriately calculates the amount of the judgment **against**

12  Wolff.  Instead of applying an internally consistent, legally correct and logically

13  coherent approach to damages, Wolff mixes and matches methodologies in an

14  effort to minimize his liability and maximize the value of the settlements, which he

15  then applies against each other incorrectly.  The Court should reject Wolff's

16  approach.

17      **H.   SEC Settlement**

18  Wolff claims that his settlement with the Securities and Exchange

19  Commission ("SEC") should be counted in his favor in reducing the judgment

20  against him.  Regardless of whether, as a matter of law, the SEC settlement should

21  be considered an offset, no plan of allocation for that settlement has been

22  approved by any Court.  As Wolff himself acknowledges about the SEC

23  settlement, "[t]his would **encompass** persons who are members of the Class in this

24  case."  *See* Wolff's Motion for Entry of Judgment, pp. 13:21-14:1.  This further

25  demonstrates the ultimate fallacy of applying an aggregate settlement offset

26

27

28

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF
JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF
Case No. 01-cv-11115 RSWL (CWx)                                                    20

1   against a claimant-by-claimant damage analysis.  Further, that settlement was not

2   reached in <u>this</u> action, but in a government regulatory action.[13]

3   ## I.    **Individualized Damages**

4        Wolff claims he intends to contest the right of certain individuals and

5   entities to recover monies against him in separate proceedings.  *See* Wolff's

6   Motion for Entry of Judgment, fn. 17 (citing *In re WorldCom, Inc. Sec. Litig.*,

7   2005 U.S. Dist. LEXIS 2603 at *15 (S.D.N.Y. Feb. 22, 2005).  Wolff certainly has

8   all rights conferred upon him by the law but, to date, he has not challenged any

9   individual or entity in this motion or a separate proceeding, but instead has

10  requested judgment be entered rather than claiming it is premature to enter

11  judgment.  *See In re Vivendi Universal S.A. Sec. Litig.*, 2001 U.S. Dist. LEXIS

12  17514 at *225 (S.D.N.Y. Feb. 22, 2011).  Therefore, the judgment should not take

13  into account any individual damages.

14  ## IV.    **CONCLUSION**

15       For the reasons set forth above and good cause, this Court should deny

16  Wolff's Motion for Entry of Judgment and instead enter the proposed judgment

17  being filed concurrently by Plaintiffs.  The Court should reject Wolff's assertion

18  that his liability is zero because that determination is based on incorrect

19  assumptions and methodologies, as discussed above.  This Court should hold that

20  Wolff is liable for the sum of **$43.0 million**.

21  DATE: March 30, 2011          **COTCHETT, PITRE & McCARTHY, LLP**

22                               By:___*/s/ Nancy L. Fineman*_____
                                      NANCY L. FINEMAN
23                                *Counsel for Lead Plaintiff CalSTRS*
                                  *and the Class*

24

---

25  [13]    While the SEC entered into settlements with Shew, Giesecke, Desimone,
    Losh, Kalina and Rosenblatt, the distinction is that Plaintiffs sought approval of
26  the settlements in this Court.  CalSTRS specifically declined to be part of the
    Wolff settlement; if it was part of the settlement, CalSTRS and the Class could not
27  have proceeded to trial against Wolff.  As with the Wolff settlement, CalSTRS and
    the Class did not participate in the SEC settlement with Tafeen.  They entered into
28  a separate settlement with Tafeen, which settlement was approved by the Court.

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT STUART WOLFF'S MOTION FOR ENTRY OF
JUDGMENT AND SUBMISSION OF PROPOSED JUDGMENT BY PLAINTIFF**
**Case No. 01-cv-11115 RSWL (CWx)**                                    21