O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Homestore.com, Inc.<br>Securities Litigation<br><br><br><br>This Document Relates To:<br><br>All Actions | Master File No.<br>CV 01-11115 RSWL (CWx)<br><br>**ORDER Re: Defendant's Renewed Motion for Judgment as a Matter of Law on the Basis of Rule 50(b) of the Federal Rules of Civil Procedure [1375]** |

On April 20, 2011, Defendant Stuart H. Wolff's ("Defendant") Renewed Motion for Judgment as a Matter of Law on the Basis of Rule 50(b) of the Federal Rules of Civil Procedure came before this Court for regular calendar [1375]. After considering all papers and arguments submitted, the Court **NOW FINDS AND RULES AS FOLLOWS:**

The Court **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law.

**A.   Renewed Motion For Judgment As A Matter Of Law**

Federal Rule of Civil Procedure 50(a) states that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party." Fed. R. Civ. P. 50(a).

"In reviewing a [motion for] judgment as a matter of law, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1040 (9th Cir. 2003). Moreover, "[j]udgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." Edgerly v. City & Cnty. of San Francisco, 495 F.3d 645, 651 (9th Cir. 2007). "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." Wallace v. City of San Diego, 479 F.3d 616, 624 (9th Cir. 2007).

The motion may be "renewed" no later than 28 days after the entry of judgment. Fed. R. Civ. P. 50(b). "The standard for granting a motion under Rule 50(b) is the same as the standard for granting a motion under Rule 50(a)." In re Vivendi Univ., S.A. Sec. Litig., 2011 WL 590915, at *13 (S.D.N.Y. Feb. 17, 2011).

Defendant argues he is entitled to a judgment as a matter of law because the evidence presented at Trial fails to support the jury's conclusions with respect to loss causation and Lead Plaintiff California State Teachers' Retirement System's ("CalSTRS") reliance on the integrity of the market price in purchasing Homestore.com, Inc. ("Homestore") stock.  Moreover, Defendant contends he is entitled to judgment as a matter of law here because the evidence at Trial failed to establish that Defendant made false or misleading statements to the public with the requisite scienter and that he was a control person with respect to Plaintiff's claim under Section 20(a) of the Securities Exchange Act of 1934.

1. <u>Loss Causation</u>

In order to establish a Rule 10(b) violation under the Securities Exchange Act, Plaintiff must establish and prove the element of loss causation. See <u>Gray v. First Winthrop Corp.</u>, 82 F.3d 877, 884 (9th Cir. 1996). Loss causation is the required causal connection between a defendant's material misrepresentation and a plaintiff's loss resulting from the subsequent decline in value of the stock when the misrepresentations come to light. See <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 344-45 (2005).  More specifically, loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a plaintiff suffers a

loss as a result of the market's reaction and drop in stock price. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 392 (9th Cir. 2010).  The fact of a fraudulent act or practice can become generally known to the market through a corrective disclosure.  "A corrective disclosure is traditionally an admission by the company that one or more of its previous statements were false or misleading followed by a corrected, truthful and complete version of those statements." In re Vivendi Univ., S.A. Sec. Litig., 634 F. Supp. 2d 352, 363 (S.D.N.Y. 2009).

At Trial, Plaintiff relied on four corrective disclosures, in the form of press releases issued by Homestore, to establish loss causation.[1]  The jury found that the truth about the misrepresentations or omissions was made generally known to the public by three of these corrective disclosures, the October 3, 2001, November 2, 2001, and December 21, 2001 press releases, and determined a total per-share loss to have been caused by each of these disclosures [1362].

Defendant argues that the evidence at Trial is insufficient as a matter of law to support a finding here that the October 3, 2001 and November 1, 2001 press releases were corrective disclosures, and

---

[1] These are: 1) the October 3, 2001 Homestore Press Release regarding Third Quarter results, 2) the November 1, 2001 Homestore Press Release regarding Third Quarter results, 3) the December 6, 2001 Homestore Press Release announcing the Resignation of its CFO, and 4) the December 21, 2001 Homestore Press Release announcing an accounting inquiry.

4

therefore asserts that these alleged disclosures could not have caused legally compensable loss for which Defendant can be liable.

The Court finds that the record shows that there is sufficient evidence to support the jury's findings here regarding the corrective disclosures and loss causation.  Federal Rule of Civil Procedure 50(a) does not allow a court to weigh the evidence, but rather a court should only "ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." <u>Wallace v. City of San Diego</u>, 479 F.3d 616, 624 (9th Cir. 2007).  Based on this standard, the record shows that there was sufficient evidence for a reasonable juror to find that under the totality of circumstances, the October 3, 2001 and November 2, 2001 press releases were corrective disclosures which caused Plaintiff to suffer loss as a result of the subsequent drop in the price of the Homestore stock.

Specifically, the Court finds that a corrective disclosure need only reveal an aspect of the fraud. <u>See</u> <u>In re Vivendi Univ.</u>, 634 F. Supp. 2d 352 at 364.  The Court finds that Plaintiff put forth sufficient evidence at Trial to support a finding here that the two press releases revealed aspects of Homestore's accounting scheme and that they were necessary in order to fully disclose the activities taking place at Homestore. <u>Id.</u>  Specifically, Plaintiff put forth testimony from its expert, Jane Nettesheim, regarding

5

1  the connection between these two press releases and the
2  revelation of the fraud, as well as the subsequent drop
3  in Homestore's stock price, as Nettesheim's testimony
4  included discussion regarding how market analysts were
5  surprised by the reduced revenue projections contained
6  in the press releases and that these press releases
7  caused analysts to speculate that something was wrong
8  with the accounting revenues at Homestore. See <u>In re
9  Vivendi Univ., S.A. Sec. Litig.</u>, 2011 WL 590915, at *33
10 (S.D.N.Y. Feb. 17, 2011)(denying defendant's renewed
11 judgment as a matter of law in part because there was
12 evidence to show loss causation given the expert
13 testified that the market analysts were surprised by
14 the news releases discussing the defendant company's
15 rating downgrade).
16     While Defendant put forth his own expert to testify
17 that these press releases could not be corrective
18 disclosures, ultimately the jury found Plaintiff's
19 expert more credible on this issue, and Defendant has
20 not met his burden here to show that these findings
21 should be disturbed or set aside. See <u>Knapp v. Leandro</u>,
22 46 F.3d 170, 179 (2d Cir. 1995)(finding that the jury
23 was entitled to decide to believe one expert's
24 testimony over the conflicting testimony of another
25 expert).
26     As such, the Court finds that in viewing the
27 evidence in the light most favorable to the nonmoving
28 party, the evidence is sufficient to support the jury's

findings here regarding this element of loss causation. See Horphag Research Ltd., 337 F.3d at 1040.

### 2. Lead Plaintiff CalSTRS' Reliance On The Integrity Of The Market

In order to establish a Rule 10(b) violation, the plaintiff must also show reliance, as this "provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." Basic Inc. v. Levinson, 485 U.S. 224, 243 (1988). Here, the jury found that at the time each of the challenged statements was made, Homestore stock traded on an active, open market upon which investors relied as an accurate reflection of the current market value of the stock. These findings effectively enabled Plaintiff to establish this element of reliance on a class-wide basis through the "fraud-on-the-market" theory.[2]

Defendant argues here that Lead Plaintiff CalSTRS' failed to prove at Trial that CalSTRS' purchased stock in reliance on the integrity of the market, and that therefore, he essentially rebutted the presumption of reliance under the fraud-on-the-market theory as to CalSTRS and CalSTRS' claims against Defendant fail as a

---

[2] Under this theory, Plaintiff may be presumed to have relied on a misrepresentation if the misleading or false information was injected into an efficient market. See Simpson v. AOL Time Warner, 452 F.3d 1040, 1051 (9th Cir. 2006). Therefore, as the jury found that Plaintiff was eligible to rely on this theory, the Plaintiff Class was entitled to a rebuttable presumption of reliance, without having to prove individual reliance from each member of the Plaintiff Class. See Basic Inc. v. Levison, 485 U.S. 224, 247 (1988).

7

1  matter of law. <u>Basic</u>, 485 U.S. at 248-49 (noting that
2  the presumption of reliance under the fraud-on-the-
3  market theory is rebuttable, and that a defendant can
4  rebut the presumption by showing any defense to actual
5  reliance, such as that a plaintiff did not actually
6  rely on the misrepresentations or the integrity of the
7  market).

8      The Court finds that the evidence at Trial is
9  sufficient to establish CalSTRS' reliance on the market
10 in this Case.  Specifically, the CalSTRS Director of
11 Corporate Equities, Trish Taniguichi, stated that
12 CalSTRS relied on the integrity of the market in
13 purchasing Homestore stock.  While Defendant points to
14 testimony from Ms. Taniguichi discussing how both
15 active and passive investors were employed by CalSTRS
16 in order to purchase stock, on balance a reasonable
17 juror could find that CalSTRS did rely on the integrity
18 of the market and on public information in trading and
19 purchasing Homestore stock, and that in being an active
20 investor it was merely being a careful and
21 sophisticated investor in purchasing said stock. <u>In re</u>
22 <u>DVI, Inc. Sec. Litig.</u>, 2011 WL 1125926, at *10-11 (3d
23 Cir. March 29, 2011).

24     Therefore, the Court finds that Defendant has not
25 met his burden here to establish that a reasonable
26 juror could not find that CalSTRS relied on the
27 integrity of the market price in purchasing Homestore
28 stock.

### 3. False Or Misleading Statements Made With The Requisite Scienter

In order to establish a Rule 10(b) violation, Plaintiff must establish that a false statement of material fact or an omission of material fact was made with the requisite scienter. See Gray v. First Winthrop Corp., 82 F.3d 877, 884 (9th Cir. 1996). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." S. Cherry St. LLC v. Hennessee Grp. LLC, 573 F.3d 98, 108 (2d Cir. 2009) (quoting Tellabs v. Makor Issues & Rights, Ltd., 551 U.S. 308, 318 (2007)).

The jury found that ten of the twenty-two challenged statements at issue in this Action were false statements of material fact or omissions of material fact. Moreover, the jury found that of these ten statements, those made by Defendant were made with the knowledge that the statement was materially false or with reckless disregard that the statement was materially false.[3]

The Court finds that based on the evidence at Trial, a reasonable juror could find that Defendant made these false statements of material fact with this requisite scienter. Specifically, Plaintiff put forth sufficient evidence at Trial to support a finding that

---

[3] These are challenged statements numbers 11, 13, 15, 17 and 18, and consist of various press releases.

challenged statement number 11,[4] a Homestore Press Release from January 25, 2001 discussing the revenue growth in the last quarter of the fiscal year 2000, was a false statement of material fact that Defendant made recklessly, as Plaintiff put forth testimony from John Giesecke ("Giesecke") and Joseph Shew ("Shew") discussing how the revenue deals during the time period involved in this press release were low-quality front-ended deals entered into in order to cover goals that could not be reached through normal business practices. Moreover, Plaintiff presented testimony regarding the fact that Defendant had been informed about suspect business transactions and the risks involved in these types of deals during the later part of the year 2000 and in early 2001.

   Moreover, the Court finds that the evidence here is sufficient to support the finding that Defendant made false statements of material fact with the requisite scienter during the third quarter of 2001.  Defendant testified at Trial that there was something wrong and inappropriate in the third quarter of 2001, and Shew testified that Defendant participated in meetings discussing how to create revenue and raise money.

---

[4] Defendant also argues here that the evidence at Trial was insufficient to support a finding that challenged statement number twelve was made knowingly by the person who made that statement.  However, the jury found this statement was not made either knowingly or recklessly, and therefore the Court will not address these arguments.

1  Defendant points to his Trial testimony and the
2  testimony of Allan Merrill discussing how Defendant was
3  surprised about the problematic transactions, but the
4  jury, as the fact finder, was in the position to weigh
5  this testimony and determine its credibility and
6  weight, and Defendant has not shown that these findings
7  here should be set aside. See In re Vivendi Univ., S.A.
8  Sec. Litig., 2011 WL 590915, at *26.
9       As such, the Court finds that Defendant has not met
10 his burden here to establish that he is entitled to
11 judgment as a matter of law on these issues.
12      4.   Defendant's Control Person Liability
13      In order to establish a violation of Section 20(a),
14 a plaintiff must show that a primary violation of
15 federal securities law was committed and that the
16 defendant 'directly or indirectly' controlled the
17 violator." Paracor Fin., Inc. v. General Elec. Capital
18 Corp., 96 F.3d 1151, 1161 (9th Cir. 1996)(citing
19 Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575
20 (9th Cir. 1990).  Control over a primary violator may
21 be established by showing that the defendant possessed
22 "the power to direct or cause the direction of the
23 management and policies of a person, whether through
24 the ownership of voting securities, by contract, or
25 otherwise." SEC v. First Jersey Sec., Inc., 101 F.3d
26 1450, 1472-73 (2d Cir. 1996).
27      The jury found that as to those false statements of
28 material fact that were made by persons other than the

11

Defendant,[5] Defendant was a control person for purposes of Plaintiff's claims under Section 20(a).

The Court finds that sufficient evidence was presented at Trial to support the jury's finding here regarding Defendant's control person liability under Section 20(a). Specifically, Plaintiff presented testimony at Trial regarding Defendant's power to direct or cause the direction of management, as well as his power to direct or cause the direction of the policies of persons that prepared the relevant financial statements here. See 17 C.F.R. § 230.405 (defining "control" within the meaning of a Section 20(a) claim as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person"). Moreover, Giesecke testified that Defendant was involved in all aspects of the business, stating he was "very involved in any major business decision" and that he "wanted to keep a tight feel and finger on how the business was run," while Shew testified that Defendant was involved in the activities of the financial department and that he "help[ed] to set goals in terms of where revenues should be." Decl. Daniel R. Sterrett, Ex. 3 at 66:11-67:2; Ex. 4 at 62:20-63:13. See Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).

---

[5] These statements are challenged statements numbers 12, 14, 16 and 21, and consist of SEC Form 10-Qs filed for the fiscal year 2000 and the first, second and third quarters of 2001.

12

As such, the Court finds that Defendant has not met his burden of proof to show that the evidence presented fails to establish that Defendant was a control person within the context of this Section 20(a) claim.

DATED: April 22, 2011

**IT IS SO ORDERED.**

/s/ RONALD S.W. LEW

---

**HONORABLE RONALD S.W. LEW**

Senior, U.S. District Court Judge